# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PABLO BATISTA** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 18-0636** |
| **v.** | : | |
| | : | |
| **O'JAYS GIGS, INC.,** *et al.* | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                JANUARY 30, 2019

## MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Pablo Batista ("Plaintiff") filed a civil action against several parties, including

Defendants O'Jay's Gigs, Inc. ("OJG"), Edward Willis Levert, Sr. a/k/a Eddie Levert, Sr.

("Levert"), and Walter Williams, Sr. ("Walter Williams") (collectively, "Moving Defendants"),[1]

in which he asserts claims for breach of contract and violations of the American with Disabilities

Act ("ADA"), the Pennsylvania Human Relations Act, ("PHRA"), and the New York State Human

Rights Law. Before this Court is a *motion to dismiss for lack of personal jurisdiction* filed pursuant

to Federal Rule of Civil Procedure ("Rule") 12(b)(2) by Moving Defendants, in which Moving

Defendants contend that they are neither subject to general nor specific jurisdiction in

Pennsylvania. [ECF 12]. In his response, Plaintiff argues that by soliciting a Pennsylvania resident

for employment, out-of-state Moving Defendants purposefully availed themselves of the benefits

---

[1]     The amended complaint identifies five defendants: OJG, Levert, Walter Williams, Eric Nolan
Grant, and Dennis "Doc" Williams. [ECF 5]. The instant motion to dismiss, however, was filed by counsel
representing OJG, Levert, and Walter Williams *only*. [*See* ECF 12 at 2 nn.1-2]. On January 14, 2019, this
action was dismissed as to Defendant Eric Nolan Grant, for lack of service. [*See* ECF 17]. Defendant
Dennis "Doc" Williams ("Doc Williams") appears to have been served, [*see* ECF 6], but has not responded
to the amended complaint.

and protections of Pennsylvania's laws and are, therefore, subject to specific jurisdiction in Pennsylvania for claims arising out of that solicitation. [ECF 16].

The issues presented in the motion to dismiss have been fully briefed and are ripe for disposition.[2] For the reasons set forth, the *motion to dismiss for lack of personal jurisdiction* is granted.

**BACKGROUND**

The following is a summary of facts relevant to the issue of jurisdiction over Moving Defendants; *to wit:*[3]

> Plaintiff, a resident of Pennsylvania, is an "internationally renowned, award-winning, professional percussionist" who has "worked as a touring musician for over thirty-two (32) years" with many highly-acclaimed artists, including Alicia Keys and Grover Washington. (ECF 5, Am. Compl. at ¶¶ 16-17).

> The O'Jays is a rhythm and blues band that was formed in the early 1960s in Canton, Ohio, and was inducted into the Rock & Roll Hall of Fame in 2005. (ECF 12, Exhibit A, Decl. of Amos Z. Mahsua ("Mahsua Decl."), at ¶¶ 6, 8). Defendant OJG, a corporation incorporated in Ohio with its principal place of business in Cleveland, Ohio, "conduct[s] business on behalf of The O'Jays such as entering contracts, promoting The O'Jays, producing/licensing The O'Jays' intellectual property, and engaging in other lawful business activities."[4] (*Id.* at ¶¶ 13-14). Defendant Levert is an individual and resident of Nevada. (Am. Compl. at ¶ 10). Defendant Walter Williams is an individual and resident of Ohio.[5] (*Id.* at ¶ 11). Non-moving Defendant Doc Williams, who appears to have conducted all

---

[2]    In addition to Moving Defendants' motion to dismiss and Plaintiff's response, this Court also considered Moving Defendants' reply. [ECF 18].

[3]    The facts set forth herein are taken from the amended complaint, [ECF 5], and the exhibits attached to Moving Defendants' motion to dismiss and Plaintiff's response to the motion. Where disputed, the facts have been construed in Plaintiff's favor.

[4]    In the amended complaint, Plaintiff refers to Defendant OJG and "The O'Jays" interchangeably. [*See* ECF 5 at 3].

[5]    Defendant Walter Williams indicates in his affidavit that he "considers [him]self a resident of both Cleveland, Ohio . . . and Las Vegas, Nevada" and owns property and spends time in both states. (ECF 12, Exhibit C, Decl. of Walter Williams ("Williams Decl."), at ¶ 3).

communications relevant to this action on Defendant OJG's behalf, is an individual who resides in New York. (*Id.* at ¶ 13).

Sometime in June or July 2015, non-moving Defendant Doc Williams called Plaintiff and indicated that the O'Jays were interested in hiring Plaintiff as a staff percussionist. (ECF 16-2 at Exhibit 2, Decl. of Pablo Batista ("Batista Decl."), at ¶ 1). Defendant Doc Williams is the "musical director for the O'Jays,"—the "person responsible for hiring musicians." (*Id.* at ¶¶ 1, 18). Over several conversations, Defendant Doc Williams and Plaintiff discussed the terms of Plaintiff's potential employment with the O'Jays. (Batista Decl. at ¶ 4). Plaintiff was subsequently offered employment for an international tour expected to run from August 3, 2015, to February 12, 2016, (Am. Compl. at ¶ 19), and after some deliberation, Plaintiff accepted the offer. (Batista Decl. at ¶ 7). At the time, Plaintiff "believed that this tour would likely lead to a permanent position with the O'Jays and/or Eddie Levert." (Am. Compl. ¶ 49).

On August 1, 2015, two days before Plaintiff's arrangement with the O'Jays was to commence, Plaintiff received a text message from non-moving Defendant Doc Williams, stating, "The OJays [sic] don't want to take on a situation that includes disabilities especially when the schedule gets hectic[.]" (Am. Compl. at ¶ 23, Exhibit 2). Plaintiff, who is legally blind, (*id.* at ¶ 21), contacted Defendant Doc Williams immediately after receiving the text, and Doc Williams explained that "two of the band members of the O'Jays, Darren M. Daughtry and Freddie D. Holliday, did not want to 'babysit' Plaintiff throughout the tour." (*Id.* at ¶ 25). Plaintiff claims that thereafter, he "was unable to secure a number of positions, as the statements made by the O'Jays' musical director and employees had circulated in the music community." (*Id.* at ¶ 57). During the six weeks leading up to the start of the tour, Plaintiff had spent 8-10 hours a day preparing for the tour, studying the O'Jays' musical arrangements and "vast repertoire." (*Id.* at ¶ 44-45). As a result of the decision to fire (or alternatively not to hire) him, Plaintiff "has suffered and will continue to suffer a loss of earnings, loss of earning capacity, loss of benefits, pain and suffering, emotional anguish, loss of life's pleasures," and litigation costs. (*Id.* at ¶ 81).

Previously, Plaintiff had performed with the O'Jays, and his disability had not interfered with those performances or with any of Plaintiff's past performances. (*Id.* at ¶¶ 26-29). When making arrangements for Plaintiff to participate in the international tour, the O'Jays were aware that Plaintiff was legally blind, (*id.* at ¶ 27), and that he was a resident of Pennsylvania. (Batista Decl. at ¶ 8). Plaintiff asserts that, in preparation for the tour, the O'Jays booked Plaintiff's flight from Philadelphia International Airport, arranged his schedule and ground transportation, rented performance equipment on his behalf, and planned his clothing. (*Id.* at ¶ 9); (Am. Compl. at ¶¶ 36-40).

Plaintiff also contends that as part of the regular touring obligations, the O'Jays occasionally perform in Pennsylvania, (Mahsua Decl. at ¶ 21), and employ

other residents of Pennsylvania, including guitarist Darren M. Daughtry and drummer Freddie D. Holliday. (Batista Decl. at ¶¶ 10-11). For performances on the East Coast, the O'Jays "use a Philadelphia-based horn section, the Urban Guerilla Orchestra Horns." (*Id.* at ¶ 12). Plaintiff contends that the O'Jays' website highlights the band's Philadelphia connections, *i.e.*, their relationship with Gamble & Huff's "Philadelphia International" label, with which they helped to establish "The Sound of Philadelphia." (ECF 16-2, Exhibit 1). Moving Defendants do not contest these facts except to stress that the O'Jays do not have any employees *working in* Pennsylvania. (Mahsua Decl. at ¶ 19) (emphasis added).

Plaintiff's amended complaint asserts that his termination or, alternatively, his not being hired, constituted a breach of contract and unlawful discrimination due to Plaintiff's blindness. Moving Defendants seek dismissal of all claims for lack of personal jurisdiction.

## LEGAL STANDARD

Pursuant to Rule 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant has raised a jurisdictional defense, the burden shifts to the plaintiff to present a *prima facie* showing of jurisdiction over the non-resident defendant in the forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction."). A plaintiff has the burden to show, "with reasonable particularity," enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the forum state. *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.").

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292

4

F.3d at 368. Once a plaintiff's "allegations are contradicted by an opposing affidavit . . . [plaintiff] must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings . . . Rather, they must counter defendant['s] affidavits with contrary evidence in support of purposeful availment jurisdiction." *Id.* at 559. To that end, "[t]he plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" *Lionti v. Dipna, Inc.*, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, n.9 (3d Cir. 1984)); *see also Lehigh Gas Wholesale, LLC v. LAP Petro., LLC*, 2015 WL 1312213, at *2 (E.D. Pa. Mar. 23, 2015) ("Plaintiff carries the burden to prove personal jurisdiction using 'affidavits or other competent evidence.'") (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)); *In re Chocolate Confectionary*, 602 F. Supp. 2d at 556-57 (a plaintiff must present contrary evidence in the form of "actual proofs[.]").

## DISCUSSION

A federal court may assert jurisdiction over a nonresident of the forum state to the extent authorized by the law of the forum, here, Pennsylvania. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Pennsylvania's long-arm statute grants jurisdiction coextensive with that permitted by the due process clause of the Fourteenth Amendment of the United States Constitution. *Id.*; *see also* 42 Pa. Cons. Stat. § 5322(b). Therefore, this Court's analysis must focus on federal due process requirements. *Applied Tech. Int'l, Ltd. v. Goldstein*, 2004 WL 2360388, at *2 (E.D. Pa. Oct. 20, 2004). This constitutional inquiry is guided by the "minimum contacts" test established in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Under this standard, a plaintiff

must show that a nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotations and citation omitted); *see also Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that it may be subject to suit in that forum. *Marten*, 499 F.3d at 296.

A federal court must possess at least one of two forms of personal jurisdiction in order to satisfy these principles; *to wit*: general jurisdiction or specific jurisdiction. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 (1984)). Plaintiff has effectively conceded that this Court lacks general jurisdiction over Moving Defendants, and argues instead that Moving Defendants are subject to this Court's specific jurisdiction.[6] Plaintiff is, however, mistaken.

Specific jurisdiction allows a court to hear claims against a defendant that "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n.8. To determine whether a court may exercise specific jurisdiction over a nonresident defendant, courts

---

[6]     General jurisdiction allows a court to hear any claim against a party whose "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 137 (quoting *Goodyear*, 564 U.S. at 924). The primary forums in which a corporate defendant is 'at home,' are the corporation's place of incorporation and principal place of business. *BNSF Ry. Co. v. Tyrrell*, __ U.S. __, 137 S. Ct. 1549, 1552 (2017) (citing *Daimler*, 571 U.S. at 137); *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016).

Here, Plaintiff does not contest that Levert is a citizen of Nevada, that Walter Williams is a citizen of either Ohio or Nevada, or that OJG is "at home" in Ohio. Moreover, Plaintiff does not offer any meaningful argument in support of general jurisdiction.

undertake a three-part inquiry. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have 'purposefully directed his activities' at the forum." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claim must "arise out of or relate to" those activities. *Helicopteros*, 466 U.S. at 414. Third, a court may consider other factors in order to ensure that the exercise of jurisdiction "'comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

As a threshold matter, "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws." *Mellon Bank*, 960 F.2d at 1221 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Courts should also consider "the relationship among the forum, the defendant and the litigation in order to determine whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* (internal quotations and citations omitted).

To support the exercise of specific jurisdiction over Moving Defendants, Plaintiff argues principally that OJG, through non-moving Defendant Doc Williams, *reached into* Pennsylvania to engage in contract negotiations with Plaintiff, a Pennsylvania resident, and that by doing so, Defendants sought the "benefits and protections" of Pennsylvania laws. These negotiations took place over the course of several months via telephone conversations and included the terms of Plaintiff's prospective employment and Plaintiff's acceptance of an offer of employment as a staff percussionist for an international tour with the O'Jays. Moreover, Plaintiff further alleges that while these conversations were ongoing, OJG made arrangements for Plaintiff's employment, including, *inter alia*, booking his flight from Philadelphia, renting his performance equipment, and setting his tour schedule. Plaintiff has not alleged that any of the Moving Defendants were ever

physically in Pennsylvania to negotiate or prepare Plaintiff's employment with the O'Jays. The question for this Court is whether Moving Defendant's acts, without more, constitute such purposeful availment of this forum such that Moving Defendants should have reasonably anticipated being haled into court in Pennsylvania.

This question was squarely addressed in the matter of *Grainer v. Smallboard, Inc.*, 2017 WL 736718 (E.D. Pa. Feb. 24, 2017), which this Court finds persuasive. In *Grainer*, the court granted a motion to dismiss for lack of personal jurisdiction where the president of a California company had "initiated telephonic communications with Plaintiff," a resident of Pennsylvania, "for the purpose of recruiting him to work on a project in Des Moines, Iowa." *Id.* at *1. The plaintiff accepted the employment, arranged with the employer to complete substantial amounts of his work from his home in Pennsylvania, and received compensation through a bank account in Pennsylvania. Though the court acknowledged that "soliciting business from a Pennsylvania resident may be considered 'purposeful availment in cases where either a continuing relationship or some in-forum performance on the part of the plaintiff was contemplated,'" the *Grainer* court held that the defendant's "efforts to recruit [the plaintiff] to work in Iowa do not fall within that category of cases." *Id.* at *2 (citing *Mellon Bank*, 960 F.2d at 1225). The *Grainer* court observed, "none of Plaintiff's projects involved business in Pennsylvania . . . [and] there is no indication that [the defendant] was trying to benefit from 'the privilege of conducting business within' Pennsylvania; rather . . . Plaintiff's residence seems to be nothing more than a fortuitous circumstance." *Id.*

Likewise, here, non-moving Defendant Doc Williams recruited Plaintiff, a Pennsylvania resident, on OJG's behalf for an international touring gig. As in *Grainer*, this conduct alone is insufficient to establish personal jurisdiction. Thus, to complete the jurisdictional inquiry, this

Court must also consider "the relationship among the forum, the defendant and the litigation." *Mellon Bank*, 960 F.2d at 1221 (quoting *Shaffer*, 433 U.S. at 204). In so doing, this Court further finds that Pennsylvania appears to have factored little, if at all, in the O'Jays' decision to solicit Plaintiff's employment. By his own account, Plaintiff "is an internationally renowned, award-winning professional percussionist" who has toured and performed with many widely-recognized musicians. (*See* Am. Compl. at ¶¶ 16-17). It is reasonable to assume that the O'Jay's, a band that tours internationally, were interested in Plaintiff regardless of his residency, whether he lived in Pennsylvania or in a different state. Moreover, with the exception of a single concert, the entirety of the tour for which the O'Jays contemplated employing Plaintiff was to take place outside of Pennsylvania, (*see* Am. Compl. at "Exhibit 2"), and Plaintiff's anticipated compensation was tied directly to that international tour. (*See* Batista Decl. at ¶ 5). As in *Grainer*, there is no indication that Moving Defendants were interested in exercising any meaningful "privilege of conducting business within" Pennsylvania. *Mellon Bank*, 960 F.2d at 1221 (quoting *Hanson*, 357 U.S. at 253). Rather, the fact that OJG recruited a resident of Pennsylvania, as opposed to any other state, appears to have been "nothing more than a fortuitous circumstance." *Grainer*, 2017 WL 736718, at *2.

Plaintiff also argues that the O'Jays' contacts with Pennsylvania are much more extensive than the contacts which directly led to his claims. For example, Plaintiff argues that the O'Jays perform occasionally in Pennsylvania, travel throughout Pennsylvania, and regularly employ residents of Pennsylvania for concerts. The O'Jays also recorded many hit songs while signed to the "Philadelphia International" label, and subsequently helped to develop "The Sound of Philadelphia." However, under the specific jurisdiction analysis, a court is entitled to exercise jurisdiction over a defendant only where the cause of action arises out of the alleged contacts.

9

Plaintiff's claims here did not arise out of, and are not related to, any contacts besides Plaintiff's recruitment. Therefore, this argument lacks merit.

Under these facts, this Court finds that by telephonically soliciting Plaintiff, a Pennsylvania resident, for employment would be performed almost entirely outside of Pennsylvania, and arranging details of that employment, Moving Defendants did not purposely avail themselves of the privilege of conducting business within Pennsylvania and, therefore, are not subject to specific jurisdiction in this court. Accordingly, Moving Defendants' motion is granted.

Though Plaintiff opposed the motion to dismiss, Plaintiff alternatively argues that discovery on the issue of jurisdiction should be allowed. The Third Circuit has instructed that jurisdictional discovery should generally be allowed unless the plaintiff's jurisdictional claim is "clearly frivolous." *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009). Plaintiff argues that this Court should allow discovery to elucidate "[h]ow often Eddie Levert and Walter Williams, as officers of O'Jay's Gigs, or their agents conduct business in the Commonwealth of Pennsylvania," and "[h]ow often the movants named above are honored in, or travel to the Commonwealth, outside of their tour schedule, given their long-standing connection to Philadelphia." [ECF 16 at p. 12]. Plaintiff has not attempted to argue, however, that his claims arise out of either Levert's and/or Walter Williams' travels to or business in Pennsylvania. Because Plaintiff's claims do not arise out of these possible contacts, further illumination of these points would not (and could not) change the outcome of this Court's jurisdictional analysis. Thus, without more offered by Plaintiff, this Court finds that jurisdictional discovery is not warranted.

Finally, Plaintiff argues that if this Court finds personal jurisdiction lacking, this matter should be transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Ohio (the "Northern District of Ohio"), the forum wherein OJG is

10

headquartered and Walter Williams resides. Section 1404(a) provides that for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The party seeking the transfer bears the burden of establishing that transfer is appropriate. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Here, Plaintiff has requested the transfer and, therefore, bears the burden.

A threshold inquiry under § 1404(a) is whether venue in the transferee district is proper. *Van Dusen v. Barrack*, 376 U.S. 612, 617 (1964); *see also Jumara*, 55 F.3d at 878. Plaintiff seems to assume that venue is proper in the Northern District of Ohio merely because Moving Defendants OJG and Walter Williams appear to be subject to general personal jurisdiction in Ohio. However, Plaintiff has not made a meaningful attempt to demonstrate either that venue would be proper in the Northern District of Ohio, or that transfer there, broadly speaking, would be appropriate. Specifically, Plaintiff has not demonstrated how the requirements for venue as set forth in 28 U.S.C. § 1391 are met in the Northern District of Ohio, and has failed to present an analysis of the public and private interests which must be examined to determine whether a transfer is warranted. *See Jumara*, 55 F.3d 873. Based on these omissions, Plaintiff's request to transfer this matter to the Northern District of Ohio is denied.

**CONCLUSION**

For the reasons set forth, Defendant's motion to dismiss is granted, and Plaintiff's request to transfer this matter is denied. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.